# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before
BURTON, HAGLER, and FLEMING
Appellate Military Judges

**UNITED STATES, Appellant**
**v.**
**Private E1 ANTONIO T. MOORE**
**United States Army, Appellee**

ARMY MISC 20180692

Headquarters, 25th Infantry Division
Kenneth Shahan, Military Judge
Colonel Ian R. Iverson, Staff Judge Advocate

For Appellant:  Captain Allison L. Rowley, JA (argued); Colonel Steven P. Haight, JA; Lieutenant Colonel Eric K. Stafford, JA; Captain Catharine M. Parnell, JA; Captain Allison L. Rowley, JA (on brief); Lieutenant Colonel Eric K. Stafford, JA; Captain Catharine M. Parnell, JA; Captain Allison L. Rowley, JA (on reply brief).

For Appellee:  Captain Benjamin J. Wetherell, JA (argued); Lieutenant Colonel Christopher D. Carrier, JA; Major Jack D. Einhorn, JA; Captain Benjamin A. Accinelli, JA; Captain Benjamin J. Wetherell, JA (on brief).

3 July 2019

---------------------------------------------------------------------
MEMORANDUM OPINION AND ACTION ON APPEAL
BY THE UNITED STATES FILED PURSUANT TO
ARTICLE 62, UNIFORM CODE OF MILITARY JUSTICE
---------------------------------------------------------------------

*This opinion is issued as an unpublished opinion and, as such, does not serve as precedent.*

HAGLER, Judge:

The United States appeals the ruling of a military judge dismissing one specification and partially dismissing another specification based on an amendment occurring after the expiration of the statute of limitations.

We first address whether we have jurisdiction over an appeal of a partial dismissal under Article 62, Uniform Code of Military Justice, 10 U.S.C. § 862 [hereinafter UCMJ].  After concluding that we do, we reverse the military judge's ruling for both specifications.

**BACKGROUND**

As it remains integral to our analysis of the military judge's ruling (and provides context to the analysis of our dissenting colleague), the unique procedural history of this case warrants an extended discussion.[1]

*A. The Initial Trial*

In 2014, a panel of officers sitting as a general court-martial convicted appellee, contrary to his pleas, of two specifications of willfully disobeying a superior commissioned officer, six specifications of sexual assault, and one specification of assault consummated by battery, in violation of Articles 90, 120, and 128, UCMJ. The panel sentenced appellee to a dishonorable discharge, confinement for twenty years, forfeiture of all pay and allowances, and reduction to the grade of E-1. The convening authority approved the adjudged sentence.

On appeal, pursuant to a *Hills* error,[2] this court set aside the findings of guilty for five of the six sexual assault specifications, affirmed the remaining findings of guilty, and authorized a rehearing on the impacted specifications. *United States v. Moore*, ARMY 20140875, 2017 CCA LEXIS 191 (Army Ct. Crim. App. 23 Mar. 2017) (mem. op.). Our superior court affirmed. *United States v. Moore*, 2018 CAAF LEXIS 63 (C.A.A.F. 10 Jan. 2018).

*B. The Rehearing*

After appellee's case was returned to the convening authority, the government elected to pursue a rehearing for the five specifications that were set aside. Notably, rather than proceeding with the same charged language from the initial trial, trial counsel instead amended these specifications prior to referral. More specifically, for each specification, trial counsel changed the bodily harm language from "removing [AR's] underwear, placing his hands on her buttocks, and pressing her down with his hands" to "by penetrating [AR's] vulva with his penis."

---

[1] When reviewing matters under Article 62, UCMJ, we may act only with respect to matters of law. *United States v. Gore*, 60 M.J. 178, 185 (C.A.A.F. 2004). While we limit our holding to the legal issues presented, we provide a broader factual and procedural picture for context. To be clear, we "may not make findings of fact" and nothing in this opinion should be construed as extending beyond our express factual limitations. *United States v. Lincoln*, 42 M.J. 315, 320 (C.A.A.F. 1995).

[2] *United States v. Hills*, 75 M.J. 350 (C.A.A.F. 2016).

MOORE—ARMY MISC 20180692

At the rehearing, the defense did not object to these changes prior to entry of pleas.  Instead, before closing arguments, the defense moved to dismiss three of the amended specifications as being outside the statute of limitations.  The military judge put the court in recess to allow the government to prepare its response, and the military judge and counsel subsequently held two conferences pursuant to Rule for Courts-Martial (R.C.M.) 802.

Upon reopening the court, the military judge explained they had discussed "the narrowing of the issues that we need to resolve, which we all appear to agree is whether the changes are a major change or a minor change."  The military judge also directed the parties to *United States v. Reese*, 76 M.J. 297 (C.A.A.F. 2017), which he "would likely be relying upon . . . in analyzing the change issue in this case."

Following argument by the parties, the military judge issued a ruling for each of the amended specifications.  Essentially, after the defense moved to dismiss three specifications, the military judge provided a ruling addressing *all five* specifications.  In his ruling, the military judge applied *Reese* in determining that each of the amendments constituted major changes, but he reached separate conclusions over the appropriate remedy.

First, for the three specifications encompassed in the defense motion, the military judge dismissed the specifications as being "barred from prosecution due to the running of the statute of limitations."  The military judge stated that any minor changes "would not be problematic," but "because the changes are major," the government did not provide the specifications to the relevant convening authority within the statute of limitations.

Next, for the two specifications that were not part of the defense motion, the military judge concluded "the major change created a requirement for a new Article 32 Preliminary Hearing," but the defense "waived both an objection to the major change and a motion for a defective referral" by failing to make a timely objection.  The military judge noted the defense had "raised the possibility of a motion for a new Article 32 Preliminary Hearing," which meant "they were clearly aware of the issue and chose not to file a motion" for these specifications.  No one addressed a statute of limitations concern with these two specifications.

Unlike the three specifications within the defense motion, these two specifications involved conduct occurring on or after 28 June 2012 (i.e. the revised Article 120).  As outlined below, the military judge later found that "[a]ll counsel at trial, and the military judge, overlooked the fact that the effective date of elimination of the statute of limitations for the 'new' Article 120 was 26 December 2013," and that the timeframe of these specifications fell into the "window" between the effective date of the statute (28 June 2012) and the elimination of the statute of limitations (26 December 2013).

3

The government did not appeal the ruling dismissing three specifications, and the military judge convicted appellee of the two remaining specifications of sexual assault (Specifications 2 and 3 of Additional Charge I). At the combined sentence rehearing, which included the additional convictions previously affirmed by this court, the military judge sentenced appellee to a dishonorable discharge and confinement for thirteen years.

## C. The Post-Trial Motion to Dismiss

Prior to authentication, the defense filed a "Motion to Reverse Findings of Guilt and [to] Dismiss Specifications 2 and 3 of Additional Charge I."[3]

In this filing, the defense asserted: (1) the statute of limitations for these two specifications – like the previously dismissed three specifications – was five years; (2) the military judge had already determined the amendments to these specifications constituted major changes; and (3) appellee "was not aware of his right to assert the statute of limitations and was not advised by the court of the right." In support of its motion, the defense cited R.C.M. 907(b)(2)(B), which states "[i]f it appears the accused is unaware of the right to assert the statute of limitations in bar of trial, the military judge shall inform the accused of this right."

In response, the government did not challenge the statute of limitations, but instead argued: (1) the amendments were not major changes; (2) the defense "tactically waived" the right to object to the amendments; and (3) the government was not barred from prosecuting the offenses based on Article 43(g), UCMJ. The government also cited to *Musacchio v. United States*, in which the Supreme Court stated that a "district court's failure to enforce an unraised limitations defense under [18 U.S.C.] § 3382(a) cannot be a plain error." 136 S. Ct. 709, 718 (2016).

In reply, the defense disputed the applicability of Article 43(g), UCMJ, and reiterated its arguments regarding a major change and that counsel were "clearly unaware of the statute of limitations applicability to these two specifications and thus could not apprise the accused."

Additionally, to distinguish *Mussachio*, the defense cited to *United States v. Collins*, 78 M.J. 530 (A.F. Ct. Crim. App. 2018). In *Collins*, the Air Force Court concluded that "*Musacchio* did not address the affirmative duty to bring the statutory bar to the attention of the accused imposed on the trial judge by R.C.M. 907(b)(2)(B), which has no civilian equivalent." 78 M.J. at 535.

---

[3] While the defense referenced a potential Article 39(a) session, both sides requested the military judge issue a ruling based on their written pleadings.

4

### D. The Military Judge's Ruling

The military judge issued a written ruling granting the defense motion in part. Specifically, the military judge granted the motion for Specification 3 of Additional Charge I, but he found that only a portion of Specification 2 of Additional Charge I fell outside the statute of limitations. As such, the military judge said he would issue new findings that retained "a finding of guilty for the period [within the statute of limitations]."

In his analysis, the military judge reaffirmed his previous ruling that the amendments constituted major changes. Among other things, the military judge concluded "the change was not fairly included in the original specification," as the government "changed the manner in which the offense was alleged to be committed" and "no longer had to prove that the sexual act was brought about by additional force beyond the penetration."

The military judge also rejected the government's argument regarding Article 43(g), UCMJ. In particular, the military judge stated this clause "only [applies] to when charges or specifications are dismissed as defective or insufficient," and the specifications in this case were "set aside based on [*Hills*]."

Next, the military judge concluded the relevant statute of limitations was five years. To this extent, the military judge stated that "[a]ll counsel at trial, and the military judge, overlooked the fact that the effective date of elimination of the statute of limitations for the 'new' Article 120 was 26 December 2013, and that the charged offenses were allegedly committed during the 18 month 'window' between 28 June 2012 and 26 December 2013."

Finally, the military judge rejected the government's argument regarding waiver. For this issue, the military judge placed heavy reliance on R.C.M. 907(b)(2)(B), as he found the rule "places an affirmative obligation upon the military judge to inform an accused of the right to assert the statute of limitations in bar of trial, if it appears that the accused is unaware of this right."

The military judge added that a "plain reading of this rule is that if the military judge has not done so when it is required, then the accused has not waived his right to assert the defense," and "[t]he Court has no doubt that had the Defense been aware of the statute of limitations, they would have objected, as evidenced by the fact that they lodged an objection to the other specifications that they recognized did fall outside the statute of limitations." To distinguish *Musacchio*, the military judge favorably cited to *Collins* and then determined "[t]he situation here is nearly identical."

5

### E. The Government's Appeal

Following the military judge's ruling, the government filed a timely notice of appeal pursuant to R.C.M. 908. This notice explained, "The subject of the Government appeal will be the Military Judge's ruling to dismiss Specification 3 of Additional Charge I and partial dismissal of Specification 2 of Additional Charge I."

On appeal, the parties dispute whether we have jurisdiction regarding the partially dismissed specification and whether the military judge erred in his ruling. We address both issues below.

## LAW AND DISCUSSION

### A. Appellee's Jurisdictional Challenge to Specification 2 of Additional Charge I

Appellee asserts we lack jurisdiction over Specification 2 of Additional Charge I, as the military judge's ruling does not "terminate[] the proceedings with respect to" this specification. *See* UCMJ art. 62(a)(1)(A). In response, the government argues that a partial dismissal is not fatal to this court's jurisdiction and cites to a multitude of cases interpreting 18 U.S.C. § 3731 (the federal civilian statute addressing government appeals). For the reasons outlined below, we find that we have jurisdiction over this specification.

### 1. Law and Standard of Review

We review issues of statutory interpretation and jurisdiction de novo. *United States v. Jacobsen*, 77 M.J. 81, 84 (C.A.A.F. 2017) (citing *United States v. Vargas*, 74 M.J. 1, 5 (C.A.A.F. 2014)). We look first to the text of the statute – if the statutory language is unambiguous, the statute's plain language will control. *Id.* (citations omitted).[4]

---

[4] In the National Defense Authorization Act for Fiscal Year 2017, Congress added a liberal construction clause to Article 62, UCMJ, which states "[t]he provisions of this section shall be liberally construed to effect its purposes." Pub. L. No. 114-328, § 5326, 130 Stat. 2000, 2929 (2016). Critically, this amendment "will not apply to cases in which charges were already referred to trial on the effective date." *Jacobsen*, 77 M.J. at 87 n.5 (citing Pub. L. No. 114-328 at § 5542(a), 130 Stat. at 2967). Therefore, as the charges in this case were referred to trial prior to the effective date of the amendment, this clause is not relevant to our resolution of the jurisdictional issue.

In the context of Article 62, UCMJ, it is also proper for courts to look to cases interpreting 18 U.S.C. § 3731 for guidance. *Id*. at 86 (citing *United States v. Browers*, 20 M.J. 356, 359 (C.M.A. 1985)). As our superior court (CAAF) has noted, "Congress authorized federal civilian government appeals in criminal cases under 18 U.S.C. § 3731 before it authorized them in the military, and modeled Article 62, UCMJ, in large part, after 18 U.S.C. § 3731." *Id*. (citation omitted). Put another way, "Congress, in enacting the revised Article 62, UCMJ, in 1983, clearly intended to afford the government a right to appeal which, 'to the extent practicable . . . parallels 18 U.S.C. § 3731.'" *United States v. Lopez de Victoria*, 66 M.J. 67, 70 (C.A.A.F. 2008) (ellipsis in original) (quoting S. Rep. No. 98-53, at 23 (1983)).

Our superior court has been clear, however, that "[f]ederal court decisions interpreting 18 U.S.C. § 3731 constitute guidance, not binding precedent, in the interpretation of Article 62." *United States v. Wuterich*, 67 M.J. 63, 71 (C.A.A.F. 2008). Furthermore, any analysis of Article 62 must also "take into account the structural differences between courts-martial and trials in federal district court, as well as the textual similarities and differences with respect to Article 62, UCMJ, and 18 U.S.C. § 3731." *Id*.

### 2. Comparing Article 62, UCMJ, and 18 U.S.C. § 3731

In relevant part, Article 62, UCMJ, states that the United States may appeal "[a]n order or ruling of the military judge which terminates the proceedings with respect to a charge or specification." *See* art. 62(a)(1)(A), UCMJ.

By comparison, the relevant section of 18 U.S.C. § 3731 states that the United States can appeal "a decision, judgment, or order of a district court dismissing an indictment or information or granting a new trial after verdict or judgment, as to any one or more counts, or any part thereof, except that no appeal shall lie where the double jeopardy clause . . . prohibits further prosecution."

As such, the plain language of 18 U.S.C. § 3731 appears to contain a modifying clause – "or any part thereof" – that is not contained within Article 62, UCMJ. The parties have not cited, and we have not yet found, any military case squarely addressing this issue in the context of partial dismissals. On this point, however, we find that a closer look at the federal case law and legislative history regarding 18 U.S.C. § 3731 is illuminating.

In particular, 18 U.S.C. § 3731 did not contain the phrase "or any part thereof" until 2002, and there is ample case law interpreting the prior statutory language. Most notably, in *Sanabria v. United States*, the Supreme Court stated in a footnote, "We agree with the Court of Appeals . . . that there is no statutory barrier to an appeal from an order dismissing only a portion of a count." 437 U.S. 54, 69 n.23 (1978). The Court analyzed the term "count" and determined that "Congress

7

could hardly have meant appealability to depend on the initial decision of a prosecutor to charge in one count what could also have been charged in two, a decision frequently fortuitous for purposes of the interests served by § 3731." *Id.* The Court added, "To so rule would import an empty formalism into a statute expressly designed to eliminate '[technical] distinctions in pleadings as limitations on appeals by the United States.'" *Id.* (quoting H.R. Conf. Rep. No. 91-1768, p. 21 (1970)) (alteration in original); *accord*, S. Rep. No. 91-1296, p. 5 (1970).[5]

Within its pleadings, the government provided citations to numerous federal courts that reached the same conclusion regarding the previous version of 18 U.S.C. § 3731. *See, e.g.*, *United States v. Serafini*, 167 F.3d 812, 814-16 (3d Cir. 1999); *United States v. Hill*, 55 F.3d 1197, 1199-1200 (6th Cir. 1995); *United States v. Bloom*, 149 F.3d 649, 652-54 (7th Cir. 1998); *United States v. Martin*, 733 F.2d 1309, 1310 (8th Cir. 1984); *United States v. Marubeni America Corp.*, 611 F.2d 763, 764-65 (9th Cir. 1980); *United States v. Oakar*, 111 F.3d 146, 149-150 (D.C. Cir. 1997).

In fact, the primary precipitating event for the amendment to 18 U.S.C. § 3731 appeared to be the fact that, despite the language of *Sanabria*, "one federal circuit court . . . held that [the statute] does not permit any government appeals from the dismissal of only part of a count." H.R. Rep. No. 107-685, at 188 (2002) (citing *United States v. Louisiana Pacific Corporation*, 106 F.3d 345 (10th Cir. 1997)). To this extent, "[t]he proposed amendment" was designed to "make clear that dismissals of any part of a count are subject to appeal by the United States in appropriate circumstances." *Id.* In this vein, this amendment was meant to codify, not change, the existing analysis of the majority of the circuit courts.

### 3. Jurisdiction of Partial Dismissals under Article 62, UCMJ

In light of the foregoing, we conclude that we have jurisdiction regarding Specification 2 of Additional Charge I. While we acknowledge the textual differences between the statutes, we find a natural syllogism between the Supreme

---

[5] Writing separately, Justice Stevens explained he could not "join that portion of the Court's decision which states that the Criminal Appeals Act permits an appeal from only a portion of a count," and he referred to that portion of the opinion as "dictum." *Sanabria*, 437 U.S. at 78-80 (Stevens, J., concurring). Other courts, to include the Seventh Circuit, have concluded, "*Sanabria's* treatment of § 3731 was not dictum. It was no stray remark or aside. It explains the Court's rationale and thus is part of the holding." *United States v. Bloom*, 149 F.3d 649, 652-54 (7th Cir. 1998); *see also United States v. Serafini*, 167 F.3d 812, 814-16 (3d. Cir. 1999) (stating the Tenth Circuit "stands alone" in declining to follow the *Sanabria* majority).

Court's analysis of the phrase "count" in *Sanabria* and our required analysis of the phrase "specification" in this case.

In our view, any attempt to distinguish these terms, particularly in light of the extensive case law regarding the prior version of § 3731, would constitute the same type of "empty formalism" rejected in *Sanabria*. 437 U.S. at 69 n.23. On this point, we again note that the *Sanabria* majority (and the majority of federal circuit courts) did not adopt the view of Justice Stevens that the previous version of § 3731 "clearly does not" permit an appeal "from only a portion of a count." *Id*. at 80 (Stevens, J., concurring); *see also* note 5, infra.

We find this case is readily distinguishable from *Jacobsen*, in which this court found a lack of jurisdiction related to a different clause of Article 62, UCMJ. In that case, our superior court agreed that § 3731 was "instructive in some respects," but the government's position "conflict[ed] with the language and structure of Article 62, UCMJ, and [our superior court's] precedent." 77 M.J. at 86-87. We do not find the same degree of textual, structural, and precedential conflicts in this case. Furthermore, unlike in *Jacobsen*, we find the federal case law provides useful guidance towards analyzing the relevant predicate phrase in this case, and we have not found a clear statement of legislative intent that would subvert our conclusion. *Id*. at 84 n.4, 86-87.

After answering the jurisdictional question in the affirmative, we next address the military judge's ruling.[6]

### B. Whether the Military Judge Erred in Finding a Major Change

For the reasons outlined below, we find the military judge erred in concluding the amendments constituted a major change. As such, and unlike our dissenting colleague, we need not analyze the interplay between R.C.M. 603, R.C.M. 905, and R.C.M. 907(b)(2)(B). Simply put, if there is no major change, then there is no statute of limitations issue.

"Whether a change made to a specification is minor is a matter of statutory interpretation and is reviewed de novo." *Reese*, 76 M.J. at 300 (citing *United States v. Atchak*, 75 M.J. 193, 195 (C.A.A.F. 2016)).

---

[6] Appellee also moved to dismiss this appeal based on an alleged violation of the timelines from the Joint Rules of Appellate Procedure. In response, the government provided several documents substantiating the process and timeline associated with its appeal. Pursuant to our review of the record, we find no violation and deny appellee's motion to dismiss.

R.C.M. 603(a) provides that "[m]inor changes in charges and specifications are any except those which add a party, offenses, or substantial matter not fairly included in those previously preferred, or which are likely to mislead the accused as to the offenses charged." *Id*. (quoting *United States v. Moreno*, 46 M.J. 216, 218 (C.A.A.F. 1997)). The R.C.M. 603(a) Discussion clarifies what constitutes a minor change and includes, *inter alia*, "those [changes] necessary to correct inartfully drafted or redundant specifications; to correct a misnaming of the accused; to allege the proper article; or to correct other slight errors."

R.C.M. 603(d) provides that, when "[c]hanges or amendments to charges or specifications other than minor changes [are] made over the objection of the accused . . . the charge or specification affected [must be] preferred anew." *See also Reese*, 76 M.J. at 300-02. The plain language of R.C.M. 603(d) does not discuss prejudice, and our superior court has overruled any precedent requiring a separate showing of prejudice. *Reese*, 76 M.J. at 301-02.

For several reasons, we conclude the amendments in this case were minor.

First, the initial and amended specifications both alleged sexual assault by penetrating AR's vulva with the accused's penis by bodily harm. In fact, as amended, the alleged act of bodily harm was "penetrating [AR's] vulva with [the accused's] penis." Thus, it is hard to conclude the amended language was not "fairly included" in the initial specification, as this language was already there.

Second, in *Reese*, the CAAF explicitly acknowledged that "changing the means by which a crime is accomplished may constitute a slight error under the appropriate circumstances." *Id*. at 301 (citation omitted). To the extent that the amendments in this case may have technically "[changed] the means by which [the] crime was accomplished," this case presents the type of "appropriate circumstances" in which any such error would be "slight." We simply do not see how the amendments in this case added "a party, offenses, or substantial matter not fairly included in those previously preferred." R.C.M. 603(a).

Third, and relatedly, the amendments could hardly have "[misled] the accused as to the offenses charged." *See id*. Our superior court's rationale in *Reese* is important here. As part of its analysis, the court expressly noted the "question of whether Reese was on notice that he would need to defend against a touching charge" and found the government's arguments on this issue to be "unconvincing." *Reese*, 76 M.J. at 301. Indeed, "[t]he evil to be avoided is denying the defendant notice of the charge against him, thereby hindering his defense preparation." *Id*. at 300 (citation omitted). In light of this analysis, it is clear that notice is still a critical component of major change issues.

In *Reese*, the government amended a specification from licking the victim's penis with appellant's tongue to touching the penis with his hand, a change based on the victim's deposition two days before trial. One can plainly see how such a change would negatively affect the defense's approach and preparation for trial.

In the present case, we see no such hindrance. The government made the changes months before trial. If the defense intended to offer that the penetration did not occur, or that the acts were consensual, these avenues were not foreclosed by the amended specifications. The government would still have to prove penetration and lack of consent beyond a reasonable doubt, just as if the defense had offered these theories on the initial specifications. In sum, there is no reason to conclude the defense was deprived of notice or a reasonable opportunity to defend against the amended specifications.[7]

We do acknowledge that, in *Reese*, the CAAF explicitly held that R.C.M. 603(d) does not have a separate prejudice component. 76 M.J. at 301-02. That said, we do not read *Reese* to negate the full language of R.C.M. 603(a). Specifically, in our view, *Reese* does not preclude us from considering the likelihood of misleading the accused in deciding whether a change is major in the first place. In fact, we read *Reese* to encourage appellate courts to consider both "unfair surprise" and similar concepts to avoid the underlying "evil" it identified: insufficient notice to the accused.

## CONCLUSION

The appeal of the United States pursuant to Article 62, UCMJ, is GRANTED and the decision of the military judge is therefore SET ASIDE. We return the record of trial to the military judge for action consistent with this opinion.

Senior Judge BURTON concurs.

---

[7] We are keenly aware that our superior court is analyzing a related issue in *United States v. Stout*, ARMY 20120592, 2018 CCA LEXIS 174 (Army Ct. Crim. App. 9 Apr. 2018) (mem. op.), *rev. granted*, 78 M.J. 93 (C.A.A.F. 2018). To the extent that our superior court provides clarifying guidance that impacts this case, we stand ready to re-examine our analysis.

MOORE—ARMY MISC 20180692

FLEMING, Judge, concurring in part and dissenting in part:

While I concur with the majority's analysis of the jurisdiction issue, I disagree with their conclusion that the amendments constituted a minor change. Therefore, I respectfully dissent. As outlined below, I would find the military judge did not err in: (1) concluding the amendments constituted a major change; (2) determining that appellee did not waive the issue; and (3) rejecting the government's argument regarding Article 43(g), UCMJ.

*1. Whether the Military Judge Erred in Finding a Major Change*

Like the military judge, I would find the amendments constituted a major change. In this case, the government changed the bodily harm language from "removing [AR's] underwear, placing his hands on her buttocks, and pressing her down with his hands" to "penetrating [AR's] vulva with his penis." In analyzing this issue, the military judge cited to *Reese* and concluded, in various parts of his rulings, that "the manner of the offense was significantly changed," "the change was not fairly included in the original specification," and the government no longer had to prove "that the sexual act was caused by the [originally] charged actions."

While this case is a closer call than *Reese*, I would similarly conclude that the amendments constituted a major change. In particular, the changes "altered the means of committing the offense." *Reese*, 76 M.J. at 300. Based on the original charge, the government had to prove offensive touchings beyond the alleged penetration, and a potential defense would involve proving that such touchings did not occur (or did not cause the sexual act). In my view, changing the bodily harm from multiple overt offensive touchings to the sexual penetration itself does not "constitute a slight error." *Id.* at 301.

Furthermore, amending the specification created an additional element. The military judge correctly noted the change required "the Government to now prove [AR] did not consent" as an element. *See United States v. McDonald*, 78 M.J. 376 (C.A.A.F. 2019) (affirming three elements exist when the actus reus and the bodily harm for the sexual assault are the same physical act); *accord* Dep't of the Army, Pam. 27-9, Legal Services: Military Judges' Benchbook, para. 3-45-14 n.2 (10 Sep. 2014) ("When the same physical act is alleged as both the actus reus and bodily harm for the charged sexual assault, include . . . a final [third] element."). I cannot agree with the majority opinion that an amendment, which changes the number of elements for a specification, is minor in nature.

For the above reasons, I would find the military judge did not err in finding the changes were major. This, however, does not end the analysis.

12

The government has repeatedly pointed to the full language of R.C.M. 603(d), which states that major changes "may not be made *over the objection of the accused*." (emphasis added). To be clear, I do not seek to diminish the importance of this language, nor have I ignored its connection to R.C.M. 905. Under normal circumstances, I would find that an accused is not entitled to relief based on an untimely objection to an alleged major change. This case is not normal, as it requires an additional analysis of R.C.M. 907(b)(2)(B).

Put another way, this issue cannot be analyzed in a vacuum. Instead, the language of R.C.M. 603(d) must be considered within the broader context of R.C.M. 907(b)(2)(B), which places a separate, independent, and affirmative duty on the military judge. Thus, while I acknowledge the untimely nature of the defense objection, it simply does not impact the required analysis under R.C.M. 907(b)(2)(B).

2. *Whether the Military Judge Erred in Finding Appellee Did Not Waive the Issue*[8]

At trial and on appeal, the government asserts that appellee waived his right to object to the amendments and thus cannot assert the statute of limitations as a defense. I disagree, for many of the reasons cited by the military judge.

More specifically, I would find the military judge correctly annotated the breadth, scope, and uniqueness of R.C.M. 907(b)(2)(B). *See, e.g.*, *United States v. Jesko*, ARMY 20160439, 2018 CCA LEXIS 328, *5-8 (Army Ct. Crim. App. 29 Jun. 2018) (mem. op.) (explaining how the rule places an "affirmative responsibility" on the military judge to determine that any potential waiver is knowing and voluntary).

At trial, the government argued that R.C.M. 907(b)(2)(B) was inapplicable because appellee "tactically waived" his right to object. The military judge directly addressed this argument in his ruling; among other things, the military judge stated

---

[8] In their pleadings, the parties focus on waiver. I acknowledge there is another potential argument that appellee *forfeited* this issue by failing to raise this claim during trial. *See United States v. Briggs*, 78 M.J. 289 (C.A.A.F. 2019) (applying a plain error review for a statute of limitations claim raised for the first time on appeal). Under the facts of this case, I do not find this standard to be appropriate. At a minimum, the military judge's ruling can be properly construed as a reconsideration of his earlier ruling during trial, which sua sponte addressed the two specifications at issue. *See United States v. Neal*, 68 M.J. 289, 296 (C.A.A.F. 2010) (explaining that until the record of trial is authenticated, the military judge "retains control over a court-martial" and may reconsider prior rulings). Regardless, this standard would not change my underlying analysis regarding R.C.M. 907(b)(2)(B).

"it was clear the Defense was unaware of the right" and "[t]he Court has no doubt that had the Defense been aware of the statute of limitations, they would have objected, as evidenced by the fact that they lodged an objection to the other specifications that they recognized did fall outside the statute of limitations." The military judge also said that "all counsel" overlooked the effective date of the elimination of the statute of limitations. Nothing in the record contradicts these conclusions.

In his ruling, the military judge also rejected the government's arguments regarding *Musacchio* and stated that R.C.M. 907(b)(2)(B) "places an affirmative obligation upon the military judge to inform an accused of the right to assert the statute of limitations in bar of trial, if it appears that the accused is unaware of this right." The military added that a "plain reading of this rule is that if the military judge has not [informed the accused] when it is required, then the accused has not waived his right to assert the defense."

On this issue, our superior court's recent opinion in *United States v. Briggs* is highly instructive:

> In *Musacchio*, the Supreme Court reasoned that a statute of limitations defense is not jurisdictional and therefore the "defense becomes part of a case only if the defendant puts the defense in issue." *Id*. Accordingly, "[w]hen a defendant does not press the defense, then, there is no error for an appellate court to correct—and certainly no plain error." *Id*. The Supreme Court, however, made this decision in the context of a federal criminal prosecution governed by the Federal Rules of Criminal Procedure. *We think that cases under the Rules for Courts-Martial are distinguishable. As indicated above, R.C.M. 907(b)(2)(B) requires the military judge to inform the accused of the right to assert the statute of limitations.* The Federal Rules of Criminal Procedure have no analogous provision. *Accordingly, in a court-martial, R.C.M. 907(b)(2)(B) makes the statute of limitations "part of a case" whenever the accused has a statute of limitations defense and does not appear to know it.*

*United States v. Briggs*, 78 M.J. 289, 295 (C.A.A.F. 2019) (emphasis added).

This rationale is strikingly similar to the analysis of *Collins* cited by the military judge. Indeed, shortly following *Briggs*, our superior court affirmed the Air Force Court's decision in *Collins* in a one-sentence opinion. *United States v. Collins*, __ M.J. __, 2019 CAAF LEXIS 231 (C.A.A.F. Mar. 12, 2019).

14

Finally, while not dispositive to my analysis, the discussion section of R.C.M. 907(b)(2)(B) also supports the military judge's ruling. This section states that "if new charges are drafted or a major amendment made after the statute of limitations has run, prosecution is barred." *See* R.C.M. 907(b)(2)(B) discussion (internal citation omitted). The inclusion of this language strongly implies that military judges are required to identify and discuss such issues with an accused.

*3. Whether the Military Judge Erred in Rejecting Appellant's Article 43(g) Claim*

At trial, the government also asserted that it was "not barred from prosecuting [the amended specifications] because of [Article] 43(g)." Again, I disagree, for the same reason provided by the military judge.

Article 43(g) provides a potential savings clause when "charges or specifications *are dismissed* as defective or insufficient for any cause" and the applicable statute of limitations "has expired" or "will expire within 180 after the date of dismissal." *See* UCMJ art. 43(g)(1) (emphasis added).

In his ruling, the military judge stated this clause "only [applies] to when charges or specifications are dismissed as defective or insufficient," and the specifications in this case were "set aside based on [*Hills*] and an unconstitutional application of [Mil. R. Evid.] 413." The military judge noted the government "believes that this equates to a dismissal due to defective specifications," but "the Court disagrees." I do, too. The specifications at issue were never *dismissed* as being defective or insufficient, and any attempt to apply Article 43(g) is trying to fit a square peg into a round hole.[9]

In conclusion, I would affirm the military judge's ruling and thus dissent from the majority opinion.

---

[9] On appeal, the government also argues, "Even assuming the amendments to [the specifications] constituted a major change . . . the receipt by the summary court-martial convening authority of the original charge on 11 December 2013 tolled the statute of limitations as to the amended charge." Any such argument was largely undeveloped at trial, and the government has cited to several cases that were not presented to the military judge. However, even upon review, none of these cases address a major change occurring after the expiration of the statute of limitations.

Finally, as the issue is not before us, I take no position over whether the government can utilize Article 43(g) in seeking to re-prefer specifications that are dismissed based on a major change occurring after the statute of limitations expires.



FOR THE COURT:

MALCOLM H. SQUIRES, JR.
Clerk of Court